UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SALLY PICKENS,

    Plaintiff,

    v.

JO ANNE BARNHART, Commissioner of Social Security Administration,

    Defendant.

Case No. C03-2519L

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on a motion to dismiss and/or for summary judgment (Dkt. #28) filed by the Commissioner of the Social Security Administration (the "SSA"). Plaintiff Sally Pickens, a former employee of the SSA, filed suit against the SSA alleging that it violated the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*[1] Defendant contends that Pickens' claims must be dismissed for lack of jurisdiction and for failure to state a claim upon which relief can be granted. In the alternative, defendant moves for summary judgment.

---

[1] Although plaintiff cites Title VII, she has not asserted any Title VII claims.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 1

For the reasons set forth in this order, the Court grants the motion.

## II. DISCUSSION

**A.   Background.**

The SSA hired Pickens as a clerk on December 10, 1972. She was promoted to the position of Claims Representative in August 1974, and she held that position for the rest of her employment with the SSA.

Pickens alleges that she was subjected to discrimination based on her disability since 1991. Because plaintiff was required to exhaust her administrative remedies on each of her claims, the Court focuses on the facts related to her allegations raised in complaints to the agency's Equal Employment Opportunity Office ("EEO").

On July 11, 1994, Pickens requested a reasonable accommodation for "liberal leave usage for absences due to a chronic medical condition involving constant pain." Defendant's Motion at Ex. 1. In support of her request, Pickens submitted a note from her physician Dr. Michael Gluck; he stated that Pickens had been diagnosed with recurrent biliary spasms and irritable bowel syndrome. The note stated, "Her pain generally occurs in the early morning and will persist until approximately 9:00 or 10:00, and then improves. This pain can be disabling. If she is able to overcome the early morning discomfort, she is generally able to perform her normal activities." Id. at Ex. 2. Pickens' request for liberal leave was approved in August 1994. Pickens' management subsequently requested additional medical documentation from her because her absences were more frequent than expected. Pickens submitted a second note from Dr. Gluck in August 1995 that stated that her prognosis was "excellent," that her irritable bowel syndrome and biliary spasms would "result in her inability to work for a number of hours," and that she "should be able to return to full employment as soon as possible but may rarely need to work for a portion of the day, due to severe spasms." Id. at Ex. 4.

Pickens filed an EEO complaint in October 1995 alleging, among other things, disability

discrimination and failure to accommodate her tendonitis and epicondylitis. The complaint was settled in May 1997. The settlement agreement provided that Pickens would work with her physicians to stabilize her medical condition during the six month period between May 7, 1997 and November 8, 1997 and that during that time, management would continue to recognize the previously granted liberal leave accommodation. Id. at Ex. 8. The settlement agreement included a provision that at the end of the six month "get well period," Pickens would achieve a normal pattern of work attendance, and she would have the opportunity to request further accommodation if needed. In September 1997, Dr. Halpern provided a note listing Pickens' health conditions and stated, "Her prognosis is good. We should be able to control/manage all of these chronic problems." Id. at Ex. 9. Dr. Halpern did not list any limitations or work restrictions.

On November 12, 1997, at the end of the get well period, Pickens met with the district manager, her first line supervisor Jim Eagan, and her union representative. Pickens did not request any accommodations, she stated that she was now able to work full time, and she rejected the agency's offer to allow her to work part time. Eagan informed her that she was expected to work a regular, full time schedule. Id. at Ex. 11, Ex. 10 at pp. 17, 18. Despite those statements, Pickens was absent from work over 50% of the time between November 12, 1997 and January 9, 1998. Eagan discussed her excessive absences with her on January 9, 1998, and explained that if she wanted to request an accommodation, she had to provide appropriate medical documentation. Eagan reiterated that liberal use of leave without pay, or an open ended work schedule, was not an option. Pickens did not request an accommodation.

Pickens filed an EEO complaint on April 23, 1998 alleging that she was discriminated against based on her disability (tendonitis) and retaliated against in the following ways: (1) on January 16, 1998, a record of leave discussion was placed in her file documenting Eagan's January 9, 1998 discussion; (2) she was suspended for a security violation from March 24, 1998

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 3                -3-

through March 27, 1998; (3) her workload was increased when management reassigned work to her from a coworker; and (4) management failed to reasonably accommodate her by refusing to reinstate her liberal leave. Id. at Ex. 16.  Pickens requested leave under the Family Medical Leave Act ("FMLA") on May 22, 1998 but did not provide the required medical documentation.

After Pickens continued to be absent a significant amount of time, Eagan informed her in October 1998 that he was concerned about her excessive absences and that an essential element of her job was to be present when expected.  In a written memorandum dated October 30, 1998, Eagan memorialized the conversation and informed Pickens that when absenteeism became excessive, adverse action, including removal, could result. Id. at Ex. 22.  Pickens filed an EEO complaint on March 15, 1999 alleging that the October 1998 warning constituted disability discrimination, retaliation, and a hostile work environment. Id. at Ex. 23.

After Pickens filed her March 1999 EEO complaint, she submitted a statement to Eagan in connection with a union grievance she had filed.  The statement requested an accommodation to work from home as necessary. Id. at Ex. 24 (requesting a copy of "form 501 Request for Reasonable Accommodation").  Eagan left the form in her mailbox.  Thereafter, Pickens submitted an April 20, 1999 letter from Dr. Halpern containing a list of all of her medical conditions. Id. at Ex. 25.  The letter did not recommend any work restrictions or accommodations.

On August 27, 1999, the SSA proposed to remove Pickens from employment, citing a pattern of excessive absenteeism. Id. at Ex. 26 (noting that Pickens was in attendance for 57% of the time from January 4, 1998 through October 24, 1998; from May 24 through August 21, 1999, Pickens was absent 55% of the time).  The proposal also noted that plaintiff had repeatedly rejected the offer of part time employment, she did not submit any requests for reasonable accommodation after the get well period, and did not follow up on her request for FMLA leave. Pickens was placed on administrative leave and given twenty-five days to respond

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 4                    -4-

to the proposal. On September 1, 1999, Pickens submitted an application for immediate retirement, also referred to as "early-out" retirement. On September 20, 1999, she responded to the proposal, submitted a request for a modified or adjusted work schedule, and submitted a letter from Dr. Robert Williams, a psychiatrist. Id. at Ex. 28 at p. 10 ("Reasonable accommodations for these mental conditions would include adequate time off work to attend medical, psychiatric, and psychotherapy appointments"). Pickens' retirement was effective September 25, 1999. Her retirement became effective before the SSA could respond to her September 20, 1999 response and request for an accommodation.

On October 4, 1999, Pickens filed a complaint with the Merit Systems Protection Board ("MSPB"), alleging that her retirement was involuntary and amounted to a constructive discharge. The MSPB dismissed her complaint for lack of jurisdiction because Pickens had not shown that her retirement was involuntary.

Pickens subsequently filed a formal EEO complaint on December 20, 1999. She alleged that she was discriminated against based on her disabilities and retaliated against by management's proposal to remove her from service, its failure to accommodate her, and her constructive discharge.

Plaintiff filed her complaint in this Court on August 8, 2003. On November 3, 2004, the Court granted defendant's motion to dismiss the complaint based on plaintiff's failure to exhaust her administrative remedies. After the EEO failed to investigate Pickens' claims within 180 days, plaintiff filed a motion to vacate the judgment in this case. The Court granted the motion and reopened the case.

**B.     Applicable Legal Standards.**

On a motion for summary judgment, the Court must "view the evidence in the light most favorable to the nonmoving party and determine whether there are any genuine issues of material fact." Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004). All reasonable inferences

supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

**C.  Analysis.**

   **1.  Failure to State a Claim.**

Defendant argued that most of Pickens' claims must be dismissed because she has failed to establish this Court's jurisdiction to adjudicate them and failed to state a claim for which relief can be granted. Specifically, defendant alleged that because Pickens raised the claims regarding her increased workload, suspension, and being placed on a leave restriction[2] in union grievances, she cannot pursue those claims before this Court. Plaintiff did not respond to or rebut this allegation. Moreover, plaintiff never claimed in her EEO complaints that defendant improperly designated her absent without leave and docked her pay, as she alleges in her response to defendant's motion.

Plaintiff also alleges that the agency failed to accommodate her by revoking her liberal leave accommodation. She concedes, however, that the agency informed her that it was revoking the accommodation as of November 12, 1997. Plaintiff's Response at p. 7. Plaintiff does not dispute defendant's contention that she failed to contact an EEO counselor about that issue within forty-five days as required. 29 C.F.R. § 1614.105(a)(1); Leorna v. United States Dep't of State, 105 F.3d 548, 550 (9th Cir. 1997). Similarly, plaintiff alleges that the October 1998 letter of warning for excessive absenteeism constituted discrimination and retaliation, and that her April 1999 request to work from home was ignored. Plaintiff, however, did not contact

---

[2] Defendant placed plaintiff on a "leave restriction" on May 14, 1998. The restriction required her to submit notes from her doctors within 48 hours of her leave usage. She filed a union grievance related to the leave restriction on May 14, 1998. Declaration of Sally Pickens (Dkt. #33) at ¶ 21.

the EEO office about those issues until December 21, 1998 and October 1999, respectively. Accordingly, all of those claims must be dismissed.

### 2. Failure to Accommodate.

To state a claim for failure to accommodate pursuant to the Rehabilitation Act, Pickens must show that (1) she is a qualified individual with a disability, (2) accommodation was required to enable her to perform the essential functions of her job, and (3) reasonable accommodation was possible. See, e.g., Buckingham v. United States, 998 F.2d 735, 739-40 (9th Cir. 1993); 42 U.S.C. § 12112(b)(5)(A)[3] (requiring employers to accommodate the known physical or mental limitations of an otherwise qualified person with a disability). Plaintiff concedes that the failure to accommodate claim raised in her first EEO complaint, which was based on her tendonitis, fails because she has presented no evidence that she was disabled by tendonitis.

Plaintiff alleged in her third EEO complaint that defendant failed to accommodate her disabilities, including irritable bowel syndrome. Even assuming that plaintiff was a qualified person with a disability during the relevant time period, she has not stated a claim for failure to accommodate. As set forth above, her allegations about the revocation of liberal leave and her April 1999 request to work from home were untimely. Even if the allegations were timely, they would fail because plaintiff has not shown that she gave defendant notice of the need for an accommodation or demonstrated that one was necessary. Instead, at the end of the get well period in November 1997, she explicitly stated that she was able to work full time and rejected

---

[3] The standards for evaluating a claim under the Rehabilitation Act are the same as those under the Americans with Disabilities Act. See, e.g., Coons v. Sec'y of the U.S. Dep't of Treasury, 383 F.3d 879, 884 (9th Cir. 2004).

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 7                -7-

the agency's offer to allow her to work part time.[4]  Thereafter, the only time plaintiff requested an accommodation before receiving the proposal to discharge her was the April 1999 request to work from home.  She did not complete the Request for Accommodation form, and the only medical documentation she provided was a list of her conditions unaccompanied by any limitations or work restrictions.  Although her management told her that she was expected to provide medical documentation to substantiate any request for an accommodation, she did not do so.  In fact, between the end of the get well period and the agency's August 1999 proposal to remove plaintiff from her position, plaintiff never provided any medical documentation of any work related limitation or evidence to support the need for an accommodation.  Therefore, because plaintiff was not entitled to a reasonable accommodation, defendant is not liable for failing to accommodate her.  See, e.g., Allen v. Pacific Bell, 348 F.3d 1113 (9th Cir. 1993) (finding that defendant had no further duty to engage in the interactive process regarding accommodation until plaintiff provided the requested medical documentation).

Finally, plaintiff alleges that defendant failed to act on her September 20, 1999 request for an accommodation.  Defendant, however, was not required to withdraw its August 27, 1999 proposal to remove her from her position for excessive absenteeism, nor was it required to ignore her request for voluntary retirement.  Accordingly, plaintiff's failure to accommodate claim is dismissed.

### 3. Disability Discrimination and Retaliation.

To state a cause of action for disability discrimination pursuant to the Rehabilitation Act, Pickens must demonstrate that (1) she was disabled as defined by the Act, (2) that she was

---

[4] Plaintiff alleges that defendant "admitted" that she was entitled to accommodation from 1997–1999 by accommodating her in 1991 and 1994.  That allegation is undermined by the fact that when the get well period ended, plaintiff stated that she could work a regular, full time schedule, and defendants repeatedly told her that was the expectation.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 8                    -8-

otherwise qualified to perform her job, and (3) her employer took an adverse employment action against her because of her disability.  See, e.g., Broussard v. Univ. of Cal., 192 F.3d 1252, 1255-56 (9th Cir. 1999).  A prima facie case of retaliation requires evidence that (1) plaintiff engaged in a protected activity, (2) her employer took adverse action against her, and (3) a causal connection between the protected activity and the adverse action.  See, e.g., Vasquez v. County of Los Angeles, 307 F.3d 884, 896 (9th Cir. 2002); Ray v. Henderson, 217 F.3d 1234, 1239 (9th Cir. 2000).  The plaintiff must present "evidence adequate to create an inference that an employment decision was *based on* an illegal discriminatory criterion."  Coons, 383 F.3d at 886 (internal citation and quotation omitted; emphasis in original).

Plaintiff alleges that the agency retaliated against her and discriminated against her based on her disability by warning her in January 1998 and October 1998 about her excessive absences and by proposing to remove her from employment in August 1999.  Even assuming that those actions were adverse employment actions, plaintiff has presented no evidence to create an inference that they were based on her alleged disability.  Defendant was entitled to discharge plaintiff for excessive absenteeism, even if her absences were causally related to her alleged disability.  See, e.g., Newland v. Dalton, 81 F.3d 904, 906 (9th Cir. 1996) (explaining that although the Rehabilitation Act "protects employees from being fired solely because of their disability, they are still responsible for conduct which would otherwise result in their termination").

Even if plaintiff had established her prima facie case of retaliation and discrimination, which she has not, defendant has offered a legitimate reason for the actions.  It has provided ample evidence that its actions were based on plaintiff's excessive, and *unprotected*, absences during the relevant time period.  Plaintiff attempts to show pretext by arguing that "there has never been a showing that Ms. Pickens' job required her to be at the office at a specific time," and a colleague was able to perform the job from home in 1994 and 1995.  Plaintiff's Response

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 9              -9-

at pp. 21-22.  Although these arguments would be relevant to whether a flexible schedule was a reasonable accommodation, plaintiff never substantiated or followed up on her single request for an alternate work schedule during the relevant time period.  Moreover, plaintiff was not counseled for working from home or during off hours, and there is no evidence that she did so.  Most notably, plaintiff has not shown that any other employee was absent as frequently as she was but was treated differently.  Based on that lack of evidence, plaintiff's discrimination and retaliation claims fail.

**4.     Constructive Discharge and Hostile Work Environment.**

To establish a prima facie case of a hostile work environment based on disability, Pickens must show that (1) she is a qualified person with a disability, (2) she was subjected to unwelcome harassment, (3) the harassment was based on her disability, (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment, and (5) the harassment can be imputed to her employer.  See, e.g., Brooks v. City of San Mateo, 229 F.3d 917, 924 (9th Cir. 2000) (applying standards to harassment based on gender).  Plaintiff's allegations regarding this claim are vague and conclusory.  Plaintiff's Response at p. 23 (arguing that she has "shown that she suffered constant reprisals and adverse employment actions at the hands of her supervisors from 1991 until her discharge in 1999").  As set forth more fully above, most of plaintiff's allegations are barred by her failure to raise them in a timely manner before the EEO.  The timely allegations, which include two counselings and a proposal to discharge her for excessive absenteeism, do not reflect harassment based on her disability.  Rather, they reflect defendant's legitimate and appropriate attempts to address plaintiff's striking pattern of excessive and unprotected absences.  The fact that defendant allowed that pattern to continue for nearly two years prior to proposing discharge undermines plaintiff's claim of any harassing or discriminatory motive.

Pickens also alleges that she was constructively discharged.  A constructive discharge

occurs "when working conditions deteriorate, as a result of discrimination, to the point that they become "sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job and earn a livelihood." Brooks, 229 F.3d at 930 (internal citation and quotation omitted). Because Pickens has failed to establish a hostile work environment claim, her constructive discharge claim fails as a matter of law. See id. ("Where a plaintiff fails to demonstrate the severe or pervasive harassment necessary to support a hostile work environment claim, it will be impossible for her to meet the higher standards of constructive discharge").

### III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendant's motion for summary judgment and dismisses plaintiff's claims. (Dkt. #28). The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff.

DATED this 13th day of March, 2006.

*/s/ Robert S. Lasnik*

Robert S. Lasnik
United States District Judge